UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARRETT BARMORE,

                **Plaintiff,**

-against-                                                   04-CV-0445

**GREGORY J. AIDALA, Superintendent of Guilderland
Central School District, ISMAEL VILLAFANE, Principal
of Guilderland High School, FLOYD DOUGLAS,
Assistant Principal of Guilderland High School, BRIAN
MCCANN, Assistant Principal of Guilderland High
School, WILLIAM G. BRINKMAN, President of
Guilderland Board of Education, GUILDERLAND
CENTRAL SCHOOL DISTRICT, GUILDERLAND HIGH
SCHOOL and TOWN OF GUILDERLAND BOARD OF
EDUCATION,**

                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I. INTRODUCTION**

      Plaintiff commenced this action asserting discrimination and civil rights claims pursuant to

42 U.S.C. §§ 1981 & 1983, and supplemental state tort and constitutional violation claims, for

conduct occurring in the Guilderland Central School District . See generally Compl. [doc. # 1].

Defendants have moved pursuant to FED. R. CIV. P. 12(c), or in the alternative, pursuant to FED. R.

CIV. P. 56, to dismiss certain claims against certain defendants. See Motion to Dismiss [doc. # 20].

Plaintiff has opposed the motion. For the reasons that follow, Defendants' motion is granted in part

1

and denied in part.

## II. STANDARD OF REVIEW

In deciding a Rule 12(c) motion, the Court applies "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). "A party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a 'higher burden' than a party proceeding on a motion for summary judgment." McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004). "[A] complaint must only include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(quoting FED. R. CIV. P. 8(a)). "This simplified notice pleading relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. On a Rule 12(b)(6) motion, the Court accepts as true the allegations in the Complaint and construes all reasonable inferences in Plaintiff's favor. See Johnson v. Newburgh Enlarged School District, 239 F.3d 246, 250 (2d Cir. 2001); Gant v. Wallingford Bd. Of Educ., 69 F.3d 669, 673 (2d Cir. 1995).[1] "A complaint will only be dismissed under Rule 12(c) if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002) (internal quotations omitted).

A court may treat a motion to dismiss as a motion for summary judgment when the opposing party has notice that the Court is being asked to consider the motion pursuant to Rule 56, and the

---

[1] On a Rule 12(b)(6) motion, the Court may consider (1) the allegations in the complaint, (2) any documents that are attached to, incorporated by reference in, or integral to the complaint, and (3) matters that are subject to judicial notice. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

opposing party has "a reasonable opportunity to present all material made pertinent to such a motion." FED. R. CIV. P. 12(c). In the instant case, the moving papers put Plaintiff on notice that defendants sought, in the alternative, a determination under Rule 56 based upon information not contained in the complaint. In support of the motion, Defendants submitted a two (2) paragraph Statement of Material Facts ("SOMF") pursuant to N.D.N.Y.L.R. 7.1, and factual evidence in the form of affidavits and exhibits.  Plaintiff responded in a similar fashion by submitting an opposing SOMF (admitting one and denying one of the two paragraphs in Defendants' SOMF)  and certain exhibits (including deposition transcripts). See Exs. A-L of Wein Aff. [doc. # 32]. Under these circumstances, the Court may properly treat the motion as one for summary judgment, and must treat it in this fashion if it considers matters beyond the pleadings. See Sira v. Morton, 380 F.3d 57, 66 (2d Cir. 2004)("A district court must convert a motion for judgment on the pleadings to one for summary judgment if the motion includes material 'outside the pleadings' and that material is 'not excluded by the court.'")(quoting Fed. R. Civ. P. 12(c)); see Fed. R. Civ. P. 12(c).

On a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002); Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999). The Court may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine

issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see N.D.N.Y.L.R. 7.1(a)(3).[2] If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III. BACKGROUND

The following facts are derived from the allegations in the Complaint except, where noted, from the one paragraph in Defendants' SOMF that Plaintiff admitted.

Plaintiff Garrett Barmore, an eighteen year old African-American senior student at the "predominately white Guilderland High School" at the time this action was commenced, had had no serious infractions while attending Guilderland High and had received excellent grades. Compl. ¶ 12. However, since he was a freshman at Guilderland High School, Plaintiff had been subjected to racial taunts and abuse, including being spit upon as a freshman football player, being routinely harassed and being called a "nigger." Id. ¶ 13. Plaintiffs assert that "defendants were aware and/or

---

[2] The Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts." Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(internal quotation marks and citations omitted). If a certain fact is not contained in a properly supported paragraph in the movant's SOMF, the Court need not consider that fact for purposes of the summary judgment motion. See N.D.N.Y.L.R. 7.1(a)(3); Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted); Monahan, 214 F.3d at 291 (The Court "is not required to consider what the parties fail to point out.").

should have been aware of this and never took any action to prevent it from occurring." Id.  A white male student, John Doe, had a history known to the defendants of being a racist at Guilderland High School, including "a long history of making racial slurs at black students of Guilderland High School" and "physically assault[ing] a female student and used the word 'nigger' in describing the people she was seen with." Id. ¶ 14.  John Doe also had a history of using racial slurs when referring to Plaintiff and, on many occasions, called him a "nigger." Id.  Plaintiff asserts that Defendants "were aware and/or should have been aware of this history of abusive and racist behavior yet allowed John Doe to remain as a student at Guilderland High where his hatred and racism continued." Id.

Plaintiff had also been subjected to various life threatening emails and/or instant messages from several students, including one who used a screen name of "death2darky" who Plaintiff believed was John Doe. Id. ¶ 15.  During Homecoming Weekend held in October of 2003, John Doe drove by Plaintiff while on school property and called him a "fucking nigger." Id. ¶ 17.  Plaintiff reported this incident to representatives of the school, including the defendants, but

> the defendants refused to take any action whatsoever against John Doe. Rather, defendant Principal and/or Assistant Principals met with both Garrett and John Doe where they were **both** told to stop this type of behavior. Garrett walked away confused because he was not sure what behavior he was supposed to stop. Defendants, though actually aware of this hateful behavior, did not punish John Doe at all for this act. As a result, John Doe was allowed to remain at Guilderland High School and posed a continuing threat to students of color.

Id. (emphasis in original).

On October 29, 2003, John Doe said "fucking nigger" to Plaintiff in the presence of various witnesses. Id. ¶ 18.  "[D]efendants were aware and/or should have been aware of this incident and did nothing to reprimand John Doe," id., despite the fact that defendants had instituted an anti-

5

bullying policy in August 2003 that prohibited this type of behavior. Id. ¶ 20.

On October 31, 2003, Plaintiff was told by various students that John Doe was threatening to find him and run him over with his car and kill him. Id. ¶ 19. "After hearing that John Doe was threatening to kill him, at approximately 12:30 p.m., fearing for his life and in imminent danger, [Plaintiff] slapped John Doe on the side of the head after which John Doe turned around, took a swing at [Plaintiff] and called him a 'fucking nigger,'" resulting in a fight between the two. Id. ¶ 21.

Plaintiff was suspended from school for the maximum five days, November 3-7, 2003, by defendant Principal Ismael Villafane and the matter was referred to defendant Superintendent Gregory J. Aidala as to whether further disciplinary action would be taken. Id. ¶ 22. Plaintiff has admitted that "[t]he five-day suspension issued to Plaintiff by the High School Principal, between November 3 through 7, 2003, was appropriate and legitimate." Defs. SOMF ¶ 2. However, Plaintiff contends that "defendant Villafane recommended to defendant Aidala a 'few weeks' additional suspension." Compl. ¶ 22.

On November 10, 2003, Superintendent Aidala extended claimant's suspension through December 1, 2003, making for a four week total suspension. Id. ¶ 23. Plaintiff contends that this suspension "was the most severe punishment defendant Superintendent had ever handed down for this type of behavior," id. ¶ 24, and that white students received considerably lesser punishments for similar, or even more egregious, behavior. Id. ¶ 25. Defendants asserted that the severity of the punishment meted out to Plaintiff was the result of the new anti-bully policy, but Plaintiff contends that "defendants unlawfully enforced this anti-bullying policy when plaintiff, a student of color, justifiably assaulted John Doe, but failed to enforce it when John Doe illegally assaulted and threatened plaintiff." Id. ¶ 26. Plaintiff asserts that "the sole reason for the suspension from school

6

for that period of time was because of an intentional discrimination against [Plaintiff] based solely on his race." Id. ¶ 27.

> On December 16, 2003, the Board of Education reduced the penalty to a five day out of school suspension, but only expunged his disciplinary record with respect to the longer period, and not the five day suspension. Further, regardless of the reduction, plaintiff was required to miss a month of school with resulting impact on his ability to pursue his studies as a Guilderland High School Senior and which resulted in severe emotional distress to the plaintiff.

Id. ¶ 29.

After his "illegal month long suspension," Plaintiff returned to Guilderland High School "only to be harassed and threatened by defendants." Id. ¶ 30. Plaintiff had recorded threats made by John Doe via -email while Plaintiff was on suspension, and when he showed the disc containing the threats to school officials, they confiscated the disk. Defendants also "made threatening remarks to plaintiff with respect to his retention of counsel." Id. On March 1, 2004, Plaintiff filed a Notice of Claim against the defendants pursuant to New York State General Municipal Law Section 50-e. Id. ¶ 31. This action and the instant motion followed.

## IV. DISCUSSION

The Court treats the instant motion as one for summary judgment only inasmuch as the one admitted paragraph in Defendants' SOMF is considered on a particular claim, and, in all respects, is treated under Rule 12(c).

### A. Failure to Alleged a Cognizable Claim Under 42 U.S.C. § 1983.

Defendants contend that Plaintiff fails to allege a cognizable claim under 42 U.S.C. § 1983 against Defendants Aidala (Superintendent of Guilderland Central School Dist.), Villafane (Principal of Guilderland High School), Douglas (Assistant Principal of Guilderland High School), McCann (Assistant Principal of Guilderland High School), and Brinkman (President of Guilderland

Board of Education). In making this argument, Defendants mix various concepts of Section 1983 jurisprudence. Plaintiff responds to some of Defendants' arguments, but not all, and also mixes legal concepts. The Court will address Defendants' arguments *seriatim.*

### 1. Acts in Accordance with State Law

Defendants first argue that Defendants Aidala and Villafane acted in accordance with their authority under New York Education Law § 3214 in imposing discipline upon Plaintiff and, therefore, could not have violated Plaintiff's rights. This argument is legally unsound. If the punishment meted out by these defendants was disproportionately severe in relation to other similarly situated non-African-American students, and if the disparity was because of Plaintiff's race, then a cognizable claim could be made out even if the punishments were within that allowed by state law. The question is not whether the defendants violated state law, but whether they violated federal law in their application of their authority under state law. While the contours of the right purportedly violated is not abundantly clear from the Complaint, the parties may use the discovery process to bring the particular claims into focus.[3]

---

[3] The Complaint alleges that the Court has federal question jurisdiction over this action because Plaintiff asserts claims under Sections 1983 and 1981. See Compl. ¶ 1. The Complaint further alleges, *inter alia*, that "the defendants" subjected Plaintiff to intentional race-based discrimination. See generally Compl. Although none of the parties have addressed the question, it would appear that the Section 1981 or Section 1983 claims asserting intentional race-based discrimination against the School District are barred by the Sea Clammers doctrine. See Middlesex County Sewerage Authority v. National Sea Clammers Assoc., 453 U.S. 1 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983."); Bruneau v. South Kortright Central School District, 163 F.3d 749, 756 (2d Cir. 1998)(Applying the Sea Clammers doctrine, the Circuit prohibited an Equal Protection Clause claim against a school district because "Title IX contains a sufficiently comprehensive enforcement scheme so as to foreclose the use of § 1983 to implement its provisions."); Bayon v. State Univ. of New York at Buffalo, 2001 WL 135817, at *3 (W.D.N.Y. Feb.15, 2001) ("Where Congress has established enforcement mechanisms containing remedial devices that are sufficiently comprehensive, as it has done with Title VI and the ADA, those enforcement mechanisms may not be bypassed by bringing suit under section 1983."); see also Booker v. Board of Educ., Baldwinsville Central, 238 F. Supp.2d 469, 475 (N.D.N.Y. 2002)(Munson, S.J.) ("The § 1981 claim is treated exactly like the § 1983 claim, becomes merged into it and is considered as a single claim.") . Of course, Title VI claims cannot be asserted against an individual defendant because the individual is not the recipient of federal funding, Booker v. Board of Educ., Baldwinsville Central, 238 F. Supp.2d

(continued...)

### 2. Lack of a Cognizable Injury

Defendants next argue that because Plaintiff admits that Villafane's 5-day suspension was "appropriate," and because the Board of Education reversed the Superintendent's additional suspension determination, Plaintiff has suffered no cognizable injury. This argument overlooks the allegations in the Complaint that Plaintiff was injured emotionally and academically because of the period of time he spent on out of school suspension before the Board of Education reversed the Superintendent's determination. Even if a jury ultimately concludes that Plaintiff suffered only nominal damages, he still has a right to present his damage claim to a jury. See Dasher v. Hughes, 2000 WL 726865, at *8 (S.D.N.Y. June 6, 2000)("Damages in a[] ... suit under § 1983 ... must ordinarily be determined by a jury, not a judge."). His allegation of injuries sustain by Defendants' action is sufficient to defeat the instant motion.

### 3. Lack of Personal Involvement

Defendants also argue that the claims against Villafane, Douglas, McCann, and Brinkman must be dismissed for lack of their personal involvement in any action causing damage to Plaintiff. It is well settled that in order to establish personal liability against a government official for a constitutional violation, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, it is axiomatic that "[p]ersonal involvement of defendants in alleged constitutional deprivations is a

---

[3](...continued)
469, 474 (N.D.N.Y. 2002)(Munson, S.J.); see also Bayon, 2001 WL 135817, at *2, and, therefore, the Court analyzes the claims against the individual defendants under Sections 1981 & 1983. See Gant ex rel. Gant v. Wallingford Bd. Of Educ., 195 F.3d 134 (2d Cir. 1999)(discussing the merits of claims brought against school officials under 42 U.S.C. §§ 1981 and 1983 alleging that defendants intentionally discriminated against plaintiff on the basis of race through (1) deliberate indifference to racial hostility in his kindergarten and first-grade classes; and (2) a decision to transfer him, mid-year, from the first grade to kindergarten).

prerequisite to an award of damages under § 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978). Personal involvement may be established either by showing that the defendant directly participated in the acts causing the constitutional deprivation, or by demonstrating a form of supervisory liability. See Johnson, 239 F.3d at 254-55; Aiken v. Nixon, 236 F. Supp.2d 211, 228 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146, 2003 WL 22595837 (2d Cir. Nov. 10, 2003).

Defendants assert that a claim cannot be maintained against Villafane because Plaintiff admitted that Villafane's five-day suspension was "appropriate and legitimate." Defs. SOMF ¶ 2. However, Plaintiff also contends that "defendant Villafane recommended to defendant Aidala a 'few weeks' additional suspension." Compl. ¶ 22. Assuming, arguendo, that the additional suspension issued by Defendant Aidala was a disparate punishment compared to that imposed on similarly situated non-African American students, then it would be possible for Plaintiff to establish that Villafane directly participated in the deprivation brought about by Aidala's suspension. In this regard, Plaintiff might be able to establish that Villafane imposed the maximum amount of punishment he was allowed under state law, but then sought, for impermissible reasons, to influence Aidala's decision whether to impose additional punishment. Under such circumstances, Plaintiff might be able to demonstrate to the satisfaction of the fact finder that Villafane's influence was a proximate cause of the additional punishment that Plaintiff contends violated his rights. See Bickerstaff v. Vassar College, 196 F.3d 435, 450 (2d Cir. 1999)("the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision").

Further, it appears that Plaintiff is asserting a race-based hostile educational environment claim. See Compl. ¶¶ 34-38, 51-55; Bryant v. Independent School Dist. No. I 38 of Garvin County,

10

Ok, 334 F.3d 928, 932-33 (10th Cir. 2003)(allowing a race-based hostile educational environment claim to proceed under Title VI where plaintiff alleged the school fostered a hostile educational environment by not curtailing racially offense conduct).   To succeed on such a claim, Plaintiff must establish (1) that the there was a racially hostile educational environment, see Davis v. Monroe Co. Bd. of Educ., 526 U.S. 629, 650 (1999)(gender based hostile educational environment); Hayut v. State Univ. of N.Y., 217 F. Supp. 2d 280, 286-289 (N.D.N.Y. 2002)(gender based claim); and (2) that the defendants were deliberately indifferent to it. See Gant ex rel. Gant v. Wallingford Bd. Of Educ., 195 F.3d 134, 140 (2d Cir. 1999)("[I]n cases of alleged student-on-student harassment, only deliberate indifference to such harassment can be viewed as discrimination by school officials themselves.").   Assuming for purposes of this motion that: (1) such a claim is cognizable against the Defendants in their individual capacities; and (2) the individual "defendants" referred to on this claim include Defendants Villafane, Douglas, and McCann, see Compl. ¶ 17,[4]   then it may be possible for Plaintiff to establish a claim against these defendants based upon their deliberate indifference to his plight.   The defendants' deliberate indifference to the race-based hostile environment, if it existed, would be the "personal involvement" sufficient to maintain the claim against them.   Accordingly, the Section 1983 claims against Villafane, Douglas, and McCann will not be dismissed on this motion but can be challenged again on summary judgment.

As to Defendant Brinkman, Defendants contend that he had no personal involvement because he acted only as a voting member of the Board of Education, and that the Board of

---

[4] The Court makes this assumption because Plaintiff alleges in the Complaint that he reported the race-based harassment by John Doe to the Principal and Assistant Principals, but does not allege that he reported it to other school officials. While his reports to these school officials might be sufficient to impose liability upon the School District for a racially-based hostile educational environment, there are no allegations of personal involvement of the other individually named defendants on this issue.

Education reversed Superintendent Aidala's suspension decision and therefore took no action that caused Plaintiff any injury. Plaintiff has failed to address these arguments. The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim, see Rizzo-Puccio v. College Auxiliary Services, Inc., 216 F.3d 1073 (2d Cir. 2000)(claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned), and, in the Northern District of New York, is deemed consent to granting that portion of the motion. See N.D.N.Y.L.R. 7.1(b)(3); Bundy Am. Corp. v. K-Z Rental Leasing, Inc., 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.); Beers v. General Motors Corp., 1999 WL 325378, at *8 (N.D.N.Y. May 17, 1999)(McCurn, S.J.).  Hence, these claims are subject to summary dismissal.

Further, the Complaint lacks any allegation that Brinkman, either individually or as President of the Board of Education, took any action that caused Plaintiff to suffer any injury.  As indicated above, although the Board did not expunge the initial 5 day suspension, Plaintiff has conceded that this suspension was appropriate and legitimate.  Thus, Plaintiff cannot complain that the Board's decision caused him an actionable injury.  Still further, there is no allegation in the Complaint that Brinkman was aware of, yet failed to act on, Plaintiff's reports of on-going racial harassment in the school.  Therefore, Brinkman cannot be held individually responsible for failing to curtail the harassment.  Based upon this, the federal claims brought against Brinkman in his individual capacity are dismissed. See Booker v. Board of Educ., Baldwinsville Central, 238 F. Supp.2d 469, 475 (N.D.N.Y. 2002)(Munson, S.J.) ("The § 1981 claim is treated exactly like the § 1983 claim, becomes merged into it and is considered as a single claim.").[5]

---

[5] If facts do exist indicating that Brinkman was aware of the harassment yet failed to do anything about it, then Plaintiff may assert these facts in an amended complaint. See Van Buskirk v. The New York Times Co., 325 F.3d 87, 91 (2d Cir. 2003)(While a dismissal under Rule 12(b)(6) is generally with prejudice when it appears beyond doubt that a
(continued...)

Finally, it is well settled that a claim against a defendant in his official capacity is one and the same as a claim against the entity that the individual represents. Id. ("The real party in interest in an official capacity suit is the governmental entity and not the named official."). Inasmuch as the Board of Education of Guilderland Central School District is named as a defendant in this action, the official capacity claim against Brickman is unnecessarily redundant and must be dismissed. Id. ("[D]istrict courts have dismissed official capacity claims against individuals as redundant or unnecessary where Monell claims are asserted against an entity.").

### B. Qualified Immunity

Defendants next contend that Superintendent Aidala is entitled to qualified immunity because "his actions did not violate a clearly established rights and his actions were objectively reasonable." At this stage of the litigation, and on the present record, neither argument can be successful. See McKenna, 386 F.3d at 436 ("Of course, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.")(internal citations and quotation marks omitted). Accepting the allegation of the Complaint as true, Aidala imposed an exceptionally severe punishment on Plaintiff because of Plaintiff's race. The right to be free from race-based discrimination in school decisions had been clearly established for years when Aidala extended

---

⁵(...continued)
plaintiff can prove no facts that would entitle him to relief, a court may dismiss the action without prejudice and give a plaintiff leave to file an amended complaint "when a liberal reading of the complaint gives any indication that a valid claim might be stated."). The lack of any argument on this point, however, tends to indicate that no such facts exist.

13

Plaintiff's suspension in November of 2003. See Gant, 69 F.3d at 673; Gant ex rel. Gant, 195 F.3d at 140-141.  On the question of objective reasonableness, and given the clearly established right implicated by the allegations in the Complaint, no reasonably competent school official could believe that a race-based reason for imposing a lengthy suspension was lawful.  Accordingly, the motion is denied.[6]

### C. Demand for Cost and Attorneys' Fees

Plaintiff's Complaint contains a separate "cause of action" for costs and attorneys' fees under 42 U.S.C. § 1988.  See Compl.¶¶ 48-50 ("Third Cause of Action").  Defendants move to strike this Third Cause of Action on the grounds that Section 1988 merely provides a form of post-trial relief, but not the basis of an independent claim.

While Section 1988 does not provide for an independent basis for recovery, it is clear from

---

[6] In opposition to the portion of Defendants' motion asserting that Aidala is entitled to qualified immunity, Plaintiff argues:

> In this case, it is defendant Aidala's very own decision which is the subject of a portion of the allegations of this lawsuit. The allegations are, among others, that defendant Aidala violated plaintiff's constitutional rights by extending his suspension by eleven days. Clearly defendant Aidala participated directly in the constitutional violation and, as such, he is not entitled to qualified immunity.

Pltf. Mem. L. p. 11.  The remaining portions of this section of the opposition Memorandum of Law are also addressed to whether or not Aidala had personal involvement in a deprivation of Plaintiff's federally protected rights, and argues that because he had such personal involvement, he is not entitled to qualified immunity. Id.

These arguments evince a misunderstanding of the concept of qualified immunity and the basis for granting (or denying) this defense. Indeed, as the Supreme Court has held, a district court does not reach the question of qualified immunity unless, and until, it has determined that "plaintiff's allegations, if true, establish a constitutional violation" by the defendant under consideration. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002). The lack of personal involvement in a constitutional tort would be a reason for dismissing the claim, not for denying or granting qualified immunity.  The motion for qualified immunity is denied because, on this record, Defendant Aidala has not demonstrated his entitlement to the defense, not because the record lacks evidence of his personal involvement in a constitutional tort. If the motion for qualified immunity is renewed on summary judgment, see Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2155-56, 150 L.Ed.2d 272 (2001)("[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."), Plaintiff's counsel would be well advised to review pertinent case law on this issue.

the Complaint that Plaintiff merely seeks costs and attorneys' fees under Section 1988 *if* he is successful on his Section 1981 or 1983 claims. See Compl. ¶ 50 ("As a result of defendants' deprivation of plaintiff's rights under 42 U.S.C.S. Sections 1981-1983, plaintiff seeks attorney's fees and costs."). Thus, the "Third Cause of Action" is no different than the standard ad damnum clause in any other Section 1981 or Section 1983 case. If successful on any of the Section 1981 or 1983 claims, Plaintiff will still have to bring a motion pursuant to Rule 54 to obtain such relief. With this understanding, the Court finds no reason to strike the demand.

### D.  No Private Right of Action under State Education Law

The Fifth Cause of Action asserts that Plaintiff's rights under New York Education Law Section 3214 were violated because he was disciplined on account of his race and color, and not because of his conduct. Plaintiff seeks monetary recovery for the "damages and severe emotional distress" he suffered because of the "unlawful and illegal" suspension imposed by the Superintendent. Compl. ¶¶ 61-62. Plaintiff also seeks "an Order expunging his student disciplinary record." Id. ¶ 63. Defendants argue that the claim is brought under New York Education Law and, because New York Education Law does not create a private right of action, the Fifth Cause of Action should be dismissed. Plaintiff has not opposed this portion of the motion.

In light of Plaintiff's failure to oppose this portion of the motion, and because the Fifth Cause of Action appears to be merely an alternative recitation of the theories set forth in the First, Second, and Fourth Causes of Action, the motion is granted and the Fifth Cause of Action is dismissed.

### E.  Failure to Exhaust Administrative Remedies

Defendants next argue that all "claims under 42 U.S.C. § 1983 must be dismissed" because Plaintiff failed to avail himself of the opportunity to appeal the Board of Education's decision to the New York State Commissioner of Education, or to institute a proceeding under Article 78 of the New York Civil Practice Law and Rules. See Defs. Mem. L. p. 19. Plaintiff argues that this portion of the motion should be denied because he did exhaust administrative remedies inasmuch as his appeal to the Board of Education "was successful in that defendant Aidala's decision was overruled and plaintiff's five day suspension was reinstated." Plt. Mem. L. p. 12. However, Plaintiff asserts that by the time the Board of Education issued its decision, the "damage had already been done in that plaintiff had underwent [sic] excruciating racial discrimination and he had already served his suspension." Id. at 12.

While the availability of pre- or post-deprivation remedies may be pertinent to a procedural due process analysis, Plaintiff does not appear to be asserting that he was denied procedural due process but rather that his right to free from race-based discrimination in school decisions was violated by Defendants *during* the process afforded by state law. As noted above, Plaintiff also appears to be asserting a hostile educational environment claim under the Equal Protection Clause. Nether party has addressed the question of whether there is a requirement to exhaust administrative remedies before bringing claims like those seemingly asserted here, but the Court doubts that such a requirement exists. See Cannon v. University of Chicago, 441 U.S. 677, 706-08 n. 41 (1979)(In recognizing a private right of action under Title IX, the Supreme Court noted that there was no requirement that a litigant first exhaust administrative remedies before bringing suit.). Further, even assuming an exhaustion requirement existed, it could not be adjudicated on the present record. Therefore, the motion is denied with the right to renew after the parties have conducted discovery

16

and, hopefully, identified the precise legal theories that Plaintiff is proceeding on.

### F.  Demand for Punitive Damages

Defendants move to strike that much of the demand for punitive damages as asserted against the School District, the High School, or the Board of Education. Plaintiff has conceded that he cannot seek punitive damages against these defendants, see Pltf. Mem. L. p. 13 (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981)), but argues that he is seeking punitive damages against the individual defendants.

The demand for punitive damages is stricken inasmuch as it is against the School District, the High School, and the Board of Education. Defendants have not moved to strike the punitive damage demand as against the individual defendants, and, therefore, the demand remains viable against the remaining individual defendants.

### G.  Sufficiency of Plaintiff's Negligence Claims

Finally, Defendants argue that Plaintiff's negligence claims must be dismissed because: (1) Defendants did not have notice that Plaintiff was going to attack John Doe; (2) Plaintiff was the aggressor in the fight with John Doe; (3) there was no "special relationship" between Plaintiff and Defendants and, therefore, Defendants had no duty to protect Plaintiff from John Doe; and (4) even if such duty existed, the fight was a "sudden, unprovoked act" that Defendants could not have prevented and, therefore, Plaintiff cannot establish proximate cause between any lack of supervision and his injuries. Plaintiff has opposed the motion asserting that questions of fact pervade each of these issues.

"It is well settled that schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of

17

adequate supervision." <u>Doe ex rel. Doe v. Bd. of Ed, Morris Cent. School</u>, 9 A.D.3d 588, 589 (3rd Dept. 2004)(quotation marks and citations omitted). In order to make out a viable negligent "supervision of other students" claim, a plaintiff must demonstrate that the school failed to exercise the degree of reasonable care that a parent of ordinary prudence would have exercised under comparable circumstances. <u>Farrukh v. Board of Ed. Of City of NY</u>, 227 A.D.2d 440, 441 (2nd Dep't 1996). Proper supervision depends largely on the circumstances attending the event or situation at hand. Where the underlying injury is caused by the intentional act of a fellow student, the "plaintiff [must] demonstrate, by the school's prior knowledge or notice of the dangerous conduct which caused the injury, that the acts of the fellow student[ ] could have reasonably been anticipated." <u>Druba v East Greenbush Cent. School Dist.</u>, 289 AD2d 767, 768 (3rd Dept. 2001). "The adequacy of the school's supervision and whether the alleged lack thereof was a proximate cause of the underlying injury generally are questions of fact for a jury to resolve." <u>Doe ex rel. Doe.</u>, 9 A.D.3d at 590.

  As argued by Plaintiff, each of Defendants' arguments raise questions of fact. The Complaint alleges that the School *was* aware of the on-going hostility between Plaintiff and John Doe, and even brought both students in for a counseling session. Accepting the allegations of the Complaint as true, the failure of the School District to curtail the on-going harassment left Plaintiff with no alternative other than to engage John Doe in a physical confrontation when he heard that Doe was going to run him over with a car. Although Plaintiff's claim of negligent supervision appears exceedingly weak in light of the fact that he instigated the confrontation with Doe, questions of fact exist as to: (1) whether some or all of the Defendants were aware that the hostility had escalated to the degree alleged by Plaintiff; (2) whether Plaintiff's decision to engage Doe in a

18

physical confrontation was reasonable under the circumstances; (3) whether the defendants could have anticipated, and stopped, the escalation of harrasment before a physical confrontation occurred between Plaintiff and Doe; and (4) and whether Plaintiff suffered some actionable damage proximately caused by Defendants' failure to stop the harassment that did not arise from the fight (e.g. emotional damage caused by having to endure the on-going harassment). These are all issues that cannot be resolved on this motion. See Cavello v. Sherburne-Earlville Central School District, 110 A.D.2d 253, 255 (3rd Dept. 1985).[7] Accordingly, that portion of the motion seeking to dismiss the negligence claims is denied with leave to renew on summary judgment following the completion of discovery.

## V.  CONCLUSION

For the reasons set forth above, Defendants' motion is denied in all respects except insomuch as it seeks to dismiss the federal claims against Defendant William G. Brinkman, and, in that regard, the motion is granted and all federal claims against Defendant Brinkman are dismissed.

**IT IS SO ORDERED**

**DATED: September 7, 2005**

Thomas J. McAvoy
Senior, U.S. District Judge

---

[7] In Cavello the Court stated:

> The complaint herein, on behalf of the infants, alleges that the parents again and again notified the school about the harassment of Tina and AJ by other students; it particularizes the response by school officials to the infant plaintiffs' plight and concludes that defendant's handling of the situation was negligent and caused the children emotional distress. In our view, the infant plaintiffs' complaint is legally sufficient for it presents a question of fact concerning whether defendant reasonably discharged its duty to supervise the students.